**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**


**TRAVIS LEVITICUS DUNHAM,**

Petitioner,

**v.**

**UNITED STATES OF AMERICA,**

Respondent.

**Civil No.: 1:14-CV-00213
Criminal No.: 1:12-CR-00011
(JUDGE KEELEY)**


## REPORT AND RECOMMENDATION

This case is before the undersigned for consideration of *pro se* Petitioner Travis Leviticus Dunham's ("Petitioner") Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2255. ECF No. 116.[1]

### I.    Procedural History

On December 12, 2014, the *pro se* Petitioner filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2255. Id. That same day, Petitioner was sent a Notice of General Guidelines for Appearing *Pro Se* in Federal Court. ECF No. 117. On December 15, 2014, an Order by the undersigned directed Respondent to answer Petitioner's section 2255 Motion. ECF No. 118. On January 12, 2015, Respondent filed a timely Response to Petitioner's section 2255 Motion. ECF No. 124. On January 30, 2015, Petitioner filed a Motion for Default Judgment stating that the Government had not filed its response timely. ECF No. 129. Petitioner's Motion for Default Judgment was denied on February 2, 2015, because the Government did timely respond. ECF No. 130. On

---

[1] All ECF references refer to Criminal Case No. 1:12-CR-11.

February 17, 2015, Petitioner replied to the Government's Response. ECF No. 134. On August 31, 2015, Petitioner filed a Motion to Amend his Motion to Vacate. ECF No. 151. The Motion to Amend was granted on March 8, 2016 and the Government was directed to file a response in thirty (30) days. On April 1, 2016, the Petitioner again filed a Motion to Amend. ECF No. 163. This time the Court denied the Petitioner's motion as untimely. ECF No. 164. On April 7, 2016, the Government filed its response to Petitioner's Amended Motion [ECF No.151] to Vacate. ECF No. 165.

## II. <u>Facts</u>

### A. Conviction and Sentence

On February 7, 2012, a federal grand jury returned a seven-count Indictment against the Petitioner. ECF No. 1. The Court appointed Assistant Federal Public Defender, L. Richard Walker, to represent Petitioner at trial. ECF No. 4. On December 18, 2012, a federal grand jury returned a nine-count Superseding Indictment charging Petitioner in Count 1 and Count 2 with Obstructing Justice by Retaliating Against a Witness; in Count 3 with Protection of Officer and Employees of the United States; and in Count 4 through Count 9 with Assaulting, Resisting, and Impeding Certain Officers or Employees. ECF No. 16. On January 29, 2013, following a five-day trial, a jury convicted Petitioner of Counts 2, 4, 5 (lesser-included misdemeanor assault), 6, 7, and 9. ECF No. 62. However, the jury acquitted Petitioner of Counts 1, 3, and 8. <u>Id</u>.

### 1. TRIAL and POST TRIAL RELIEF

On July 2, 2013, Petitioner filed a Motion for a New Trial alleging that the Government failed to disclose that the Department of Justice, Office of Inspector General was investigating USP Hazelton Correctional Officer, and government witness,

John Fitch in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). ECF No. 83. In its response, the Government conceded that Petitioner could establish the first two prongs of the <u>Brady</u> analysis because evidence of the OIG investigation was favorable to Petitioner and the Government did not disclose evidence of the OIG investigation prior to trial. ECF No. 84 at 11. However, the Government argued that "[e]ven if the defendant can show that the OIG investigation was favorable and suppressed, his motion must fail because the OIG investigation was not material to the convictions in Counts 2, 4, 5, 6, and 9." <u>Id</u>.

On September 4, 2013, the Court denied Petitioner's Motion for New Trial. Order, ECF No. 86. The Court reasoned that Petitioner was unable to establish that evidence about the OIG investigation was material to Counts 2, 4, 5, 6, and 9. <u>Id</u>. at 11. First, the Court reasoned Petitioner would have been unable to use the evidence of the OIG investigation at trial to show bias because at the time of trial, Fitch had not been made aware that the investigation against him was taking place. <u>Id</u>. Second, in light of the volume and nature of the evidence presented by the Government at trial, the Court reasoned there was no appreciable possibility that the earlier disclosure of the <u>Brady</u> material would have had an effect on the ultimate outcome of the case. <u>Id</u>. However, the Court noted that evidence of the OIG investigation was material to Petitioner's conviction as to Count 7, which dealt with the injuries to Fitch from Petitioner's alleged biting of his finger. <u>Id</u>. at 12-13. The Court reasoned that "Fitch was the only witness to testify about the finger biting incident, and thus, the Court cannot say that the evidence was so overwhelming on this Count that Dunham would have been unable to challenge Fitch's credibility on cross-examination using the evidence of the OIG investigation." <u>Id</u>.

at 13. Accordingly, the Court denied Petitioner's Motion for a New Trial as to Counts 2, 4, 5, 6, and 9 but vacated and dismissed Petitioner's conviction on Count 7. Id. at 12-13.

### 2. Sentencing

On September 5, 2013, Petitioner appeared before the Court for sentencing. Sent. Tr., ECF No. 102. After considering several factors, including the fact that Petitioner was a federal inmate and Toothman[2] was a prison official at the time of the attack, the determination that Petitioner's trial testimony was a "willful attempt to impede the administration of justice by providing false testimony before the jury and the Court," the substantial risk of bodily injury to Toothman by striking and twisting her head, and the substantial risk of bodily injury to Toothman and other prison officials by kicking, the Court found a base level of 32. Id. at 11-16. The Court sentenced Petitioner to a 240 month term of imprisonment. Id. at 49. The Court ordered such sentence to run consecutive to Petitioner's prior sentences from the Western District of North Carolina.[3] Id. at 50.

### B. Direct Appeal

On September 17, 2013, Petitioner filed an appeal to the United States Court of Appeals for the Fourth Circuit. ECF No. 93. The Fourth Circuit appointed new counsel, Barry Philip Beck, to represent the Petitioner in his appeal. ECF No. 98. In his appeal, Petitioner raised two issues: (1) the Court abused its discretion by denying Petitioner's Motion for a New Trial based on the Government's failure to disclose the investigation of Fitch and (2) the Court abused its discretion in restricting defense counsel's cross-

---

[2] Kerri Toothman is the case manager at the United States Penitentiary at Hazelton (USP Hazelton) and was the victim of the alleged attack by Mr. Dunham in this case.

[3] Western District of North Carolina, Case Nos. 3:06-CR-456 and 3:00-CR-60

examination of USP Hazelton Special Investigative Agent Shawn Burchett. Per Curiam Op. of USCA, ECF No. 112 at 2.

On May 28, 2014, in a per curiam opinion, the Fourth Circuit denied Petitioner's appeal finding that the District Court did not abuse its discretion in denying Petitioner's Motion for a New Trial or restricting defense counsel's cross-examination of Burchett. Id. Further, the Fourth Circuit recognized the volume and nature of the evidence against the Petitioner that was presented by the Government at trial, determining the outcome would not have changed. Id.

### C. Federal Habeas Corpus

In Petitioner's § 2255 Motion, Petitioner asserts the following claims for relief: In grounds one and four, (1) Petitioner asserts trial counsel was ineffective for failing to call Special Investigative Agent Shawn Burchett and (4) Petitioner claims trial counsel violated his Fifth Amendment right to call witnesses for the defense by failing to call Special Investigative Agent Shawn Burchett and declining to call the investigators for the defense. In grounds two and five, (2) Petitioner claims trial counsel was ineffective for failing to impeach Neal Schultz and (5) failing to impeach Amber Seaman.In ground three (3), Petitioner asserts trial counsel was ineffective for failing to adequately investigate whether John Fitch knew he was under investigation. In ground six (6), Petitioner claims trial counsel was ineffective for failing to allege that certain bruising on Kerri Toothman's thighs, legs, shoulders, neck, and arms was not sustained until days or weeks after she was attacked by Petitioner. ECF No. 116.

In Petitioner's Amended Section 2255, he claims that counsel was ineffective for (1) failing to investigate his mental health; (2) failing to investigate whether narcotics were

in Toothman's system at time of the incident; (3) failing to have bias jurors removed; and failing to object to the lack of minorities on the jury panel. For relief, Petitioner asks this Court to vacate his sentence. Id. at 39.

## D. Recommendation

Based upon a review of the record, the undersigned recommends that Petitioner's section 2255 Motion be denied and dismissed from the docket because Petitioner's ineffective assistance of counsel claims lack merit.

## III.    Analysis

### A. Standard Governing Ineffective Assistance of Counsel

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of her conviction. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate

counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002)(quoting Strickland, 466 U.S. at 689).   Furthermore, the standard of reasonableness is objective, not subjective.   See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id. at 687.  Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed.  See Id. at 691. The Fourth Circuit has recognized that "[i]f the defendant cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong."  Fields v. Maryland, 956 F.2d 1290, 1297.

### B.  Petitioner's Ineffective Assistance of Counsel Claims

#### 1.  Grounds One and Four – Failure to Call Special Investigative Agent Shawn Burchett and Investigators for the Defense

The decision whether to call a defense witness is "a 'strategic decision' demanding the assessment and balancing of perceived benefits against perceived risks, and one to which '[w]e must afford…enormous deference.'" United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004) (citing United States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994)). To evaluate such a decision, the court must not confine the "examination of the reasonableness of trial counsel's decision to only the literal wording of his explanation." Terry, 366 F.3d at 317. Rather, the court must "evaluate the reasonableness of counsel's explanation for not calling these witnesses in light of 'the circumstances of counsel's challenged conduct, and … from counsel's perspective at the time.'" Id. (citing Strickland, 466 U.S. at 689). In doing so, the court "'must indulge a

strong presumption … that, under the circumstances, the challenged action might be considered sound trial strategy.'" Id.

In the instant case, Petitioner alleges his trial counsel was ineffective for failing to call as witnesses in his case in chief Special Investigative Agent Shawn Burchett and other investigators. Mot. at 5, 20-21, ECF No. 116. These allegations are meritless. First, trial counsel's decision not to call Special Investigative Agent Shawn Burchett was reasonable and strategic. At trial, Agent Burchett was called as a witness by the Government on direct exam.  Sent. Tr., ECF No. 105 at 475:24-25. Defense counsel was then allowed to cross-examine Agent Burchett. Id. at 484:20 Defense counsel asked in depth questions about the investigation such as whether the crime scene was secure and who was involved in that process. Id. at 484-489.  The Government objected to that line of questioning because it was outside the scope of direct. Id. 487:6-8. Judge Keeley permitted Defense Counsel to continue with the line of questioning for a brief period of time then the Government objected again.  Id. at 487-489. Following the objection at a bench conference, Judge Keeley stated that her recollection of the testimony on direct was that Agent Burchett, "…deferred interviewing Ms. Toothman until the next day because of her state, emotional state and he asked her to prepare a statement.  The 16th he went down to her house and met with her and he testified that in the time he's been there he's had no complaints of excessive force in regard to this incident…."  Judge Keeley further commented with regard to trial counsel's cross, "So I think you're far afield."   The Court found that trial counsel's questions were beyond the scope of the Government's direct examination and suggested that he called Agent Burchett in his case in chief if he wanted to probe any further into the investigation. ECF

No. 105, Trial Tr. at 489:23–491:7. Trial counsel stated, "I don't want to." Id. at 491:3. However, pursuant to United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004), this Court is not limited to the literal wording of counsel's explanation in determining whether trial counsel's decision not to call Burchett as a witness was a matter of trial strategy. Such wording has no relevance in evaluating the strategic nature of trial counsel's decision. Agent Burchett was not directly involved in the incident.  Sent. Tr., ECF 105 at 477:14.  Agent Burchett investigated the incident and testified that he saw the victim, Ms. Toothman directly after the incident. Id. Agent Burchett testified that Ms. Toothman was "distraught", that she was bleeding on the side of her face and it appeared that she had an injury to the eye.  Id. at 477:16-25.  Agent Burchett further testified that on June 16, 2011, he went to Ms. Toothman's home to get her statement and take photographs of her injuries.  Id. at 478:21-25.  On cross-examination, Agent Burchett testified that the FBI was the lead investigator in this case. Id. 485: 1-25.  Agent Burchett's duties are to collect documents and investigative materials and forward that on to the FBI.  Id. Therefore, trial counsel's decision not to call Burchett was reasonable and strategic given the scope and nature of his knowledge of the incident and the testimony given at trial.

Further, trial counsel's decision not to call his own investigators as witnesses at trial was reasonable and strategic. The decision not to call an investigator employed by defense counsel is a matter of trial strategy. Osborne v. Purkett, 411 F.3d 911, 918 (8th Cir. 2005). Where an investigator works for defense counsel, like the investigators in the instant case, the investigators are "not likely to be viewed as persuasive and could even impair the defense team's credibility with the jury." Id. Thus, because the investigators

could be viewed as unpersuasive or impair the defense team's credibility with the jury, trial counsel's decision not to call his own investigators as witnesses at trial was reasonable and strategic. Thus, Petitioner's claims are meritless.

### 2. Ground Two and Five– Failure to Impeach Neal Schultz and Amber Seaman

Failure of defense counsel to point out discrepancies between the witness's pretrial statement and his trial testimony is a matter of trial strategy. United States v. Guerra, 628 F.2d 410 (5th Cir. 1980); see also Hammoud v. United States, 2015 WL 8544710, at *10 (W.D.N.C. Dec. 10, 2015). Here, Petitioner claims that trial counsel was ineffective for failing to impeach Neal Schultz and Amber Seamen. Mot. to Vacate at 15, ECF No. 116.

#### a. Neil Schultz

With regard to Neil Schultz, Petitioner claims that his trial counsel should have impeached Petitioner with his FBI statement. Id. In the FBI statement, Mr. Schultz says he "quickly went into action by lowering the boom on Dunham." Id. at 16. Mr. Schultz testimony at trial was as follows:

> Q. You talked about restraining the inmate. What control techniques did you use to assist others in restraining Mr. Dunham?
> A. Basically the only techniques I used I just attempted to get his arms behind his back and place him in hand restraints.
> Q. Okay. Did you take him to the ground?
> A. No, sir.
> Q. Did you tackle him or put him in a bear hug and slam him down, anything like that?
> A. No, sir, it was—a group of us was attempting to restrain him when the desk broke and we went through it.

ECF No. 105 at 379:3-15. Petitioner alleges that his trial counsel was deficient for failing to highlight the discrepancy in Schultz FBI statement where he stated he "…lower[ed]

the boom on Dunham" and his trial testimony above. Petitioner also argues that Schultz's grand jury testimony should have been used to impeach; however, Schultz did not testify before the grand jury. Resp. to Mot. to Vacate at 8, ECF No. 124.

Given the large amount of evidence of Petitioner's guilt, the alleged discrepancies between Schultz's trial testimony and his pretrial statements to the FBI not raised during trial would not have reasonably changed the outcome of the trial. Eight eyewitnesses testified that only the minimal amount of force necessary was used to restrain Petitioner during his attack.[4] Thus, evidence of the amount of force necessary to restrain the Petitioner does not detract from the extensive evidence that he did attack Toothman. Therefore, pursuant to Guerra, trial counsel made a reasonable, strategic decision not to highlight any alleged discrepancy between Schultz's trial testimony and his pretrial statement to the FBI. Therefore, Petitioner's claim has no merit.

### b.    Amber Seamen

With regard to Amber Seamen, Petitioner claims that his trial counsel allowed Ms. Seamen to perjure herself on the witness stand by denying the fact that she told staff the camera was rolling.  Mot. at 22, ECF No. 116. Petitioner claims that pictures taken at the scene that show Ms. Seamen was alone when "the camera is on" was spoken would impeach her testimony.

---

[4] The following witnesses testified that only the minimal amount of force necessary was used to restrain Petitioner during his attack : (1) Unit Secretary Dean Moyers at ECF No. 104, Trial Tr. 102:7-22, 113:7-8; (2) Unit Manager Walter Williams at ECF No. 104, Trial Tr. 124:6 – 125:18; (3) Correctional Counselor Eric Griffin at ECF No. 104, Trial Tr. 157:9 – 158:9; (4) Challenge Treatment Specialist Charles Reshenberg at ECF No. 104, Trial Tr. 214:26 – 215:10; (5) Challenge Treatment Specialist Gregory Harris at ECF No. 104, Trial Tr. 232:22 – 233:1; (6) Challenge Treatment Specialist Christopher Grant Baker at ECF No. 104, Trial Tr. 252:8 – 253:13; (7) Correctional Officer John Fitch at ECF No. 105, Trial Tr. 343:15 – 344:9, 354:23 – 355:12; and (8) Engineering Technician Ardell Ball at ECF No. 105, Trial Tr. 419:24 – 420:24.

Ms. Seaman was employed as a Captain's Secretary at USP Hazelton during Petitioner's attack. Trial Tr. at 428:4-6, ECF No. 105. When Petitioner was being restrained during his attack, Ms. Seaman was directed to obtain a camera and begin filming the events occurring. Id. at 429:11-18. Seaman testified that she did not verbally advise staff that the camera was recording. Id. at 432:16–433:19. Petitioner claims that trial counsel was ineffective for failing to impeach Seaman on such point. Mot. to Vacate at 22, ECF No. 116.

However, trial counsel made a reasonable, strategic decision not to impeach Seaman's testimony that she did not announce that the camera was recording. First, the photographs provided by petitioner don't provide evidence to impeach.  A person other than Ms. Seamen could have said "the camera is on." Further, challenging Seaman's credibility on such an immaterial and irrelevant point would not have mitigated the voluminous amount of evidence, referenced by both the trial court and the Fourth Circuit Court of Appeals, against Petitioner at trial. Thus, Petitioner's claim is meritless.

### 3.  Ground Three - Failure to Adequately Investigate John Fitch

The legal doctrine that "the mandate of a higher court 'is controlling as to matters within its compass'" is firmly established. United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (citing Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168 (1939)). As such, "a lower court generally is 'bound to carry the mandate of the upper court into execution and [may] not consider the questions which the mandate laid at rest.'" Id. Thus, the mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court." Bell, 5 F.3d at 66 (citing United States v. Bell, 988 F.2d 247, 251 (1st Cir. 1993).

Petitioner argues that trial counsel was ineffective for failing to adequately investigate whether John Fitch knew he was under investigation. Mot. to Vacate at 19, ECF No. 116. However, Petitioner is foreclosed from raising this issue in his § 2255 Motion pursuant to the mandate rule. In denying Petitioner's direct appeal, the Fourth Circuit Court of Appeals agreed with the District Court that, "in light of the volume and nature of the evidence presented by the Government at trial, there is no appreciable possibility that the earlier disclosure of the <u>Brady</u> material would have had an effect on the ultimate outcome of the case." ECF No. 112 at 4. Further, the Court of Appeals stated, "…Fitch's testimony was cumulative and corroborative in every aspect." <u>Id</u>. Therefore, because the Court of Appeals ruled that earlier disclosure of the <u>Brady</u> material would have had no effect on the outcome of the case and Petitioner has already raised this issue on direct appeal, Petitioner may not raise this issue in this Motion.

Assuming that Petitioner has properly raised his claim that trial counsel failed to adequately investigate John Fitch, Petitioner has presented no evidence that trial counsel purposely limited or curtailed his investigation into Fitch. Further, assuming that Petitioner could establish that trial counsel's investigation into Fitch was inadequate, the outcome of the trial would not have reasonably been impacted. As the Court of Appeals noted above, Fitch's testimony was cumulative and corroborative. Thus, Fitch's knowledge of an investigation against him had no bearing on the charges against the Petitioner in light of the voluminous evidence of Petitioner's guilt. Therefore, Petitioner's claim is meritless.

### 4.  *Ground Six – Failure to Introduce Evidence*

"…[R]eview of counsel's strategic decisions as to which evidence to present at trial is 'highly deferential,' and there is a presumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" Byram v. Ozmint, 339 F.3d 203, 209 (citing Strickland, 466 U.S. at 689). Trial counsel has wide discretion to decide what evidence to introduce at trial. Id.

Petitioner claims trial counsel was ineffective for failing to allege that certain bruising on Toothman's thighs, legs, shoulders, neck, and arms was not sustained until days or weeks after she was attacked by Petitioner. Mot. to Vacate at 22, ECF No. 116. However, trial counsel made a reasonable, strategic decision not to impeach existing evidence and testimony that Toothman was bruised in the days immediately following the attack.

At trial, USP Hazelton Special Investigative Agent Shawn Burchett testified that he photographed Toothman's injuries on June 16, 2011, two days after she was attacked by the Petitioner. Trial Tr. at 478:21-479:2, ECF No. 105. At trial, Toothman testified that Burchett had photographed her injuries and explained that such injuries, bruises on her thighs, legs, shoulders, and arms, were sustained when she was attacked by Petitioner. Trial Tr. at 45:8-47:19, ECF No. 104. Petitioner's claim that Toothman did not sustain such injuries until she went to the beach days after the photographs were taken is not supported by evidence at trial. Toothman testified that she did not leave for the beach until June 18, 2011, two days after Burchett testified that the photographs were taken. Id. at 47:25-48:6.

Furthermore, even if trial counsel would have alleged such injuries were not sustained until days after the attack, such evidence challenging Toothman's injuries

would not have mitigated the voluminous amount of evidence, referenced by both the trial court and the Fourth Circuit Court of Appeals, against Petitioner at trial. Therefore, Petitioner's claim is without merit.

### 5. *AMENDED SECTION 2255 MOTION*

#### A. *Failure of counsel to investigate Petitioner's mental state.*

Claims of ineffective assistance of counsel for failure to investigate are analyzed in light of all circumstances. In <u>Burger v. Kemp</u>, 483 U.S. 776, 794 (1987), the court held that while counsel could have made a more thorough investigation, in considering claims of ineffective assistance of counsel, "[w]e address not what is prudent or appropriate, but only what is constitutionally compelled."  <u>Burger v. Kemp</u>, 483 U.S. 776, 794 (1987) (quoting <u>United States v. Cronic</u>, 446 U.S. 648, 665 n. 38 (1984)).  In <u>Strickland</u>, the Court held that "…counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." <u>Strickland</u>, 466 U.S. at 690-91.

Petitioner asserts that trial counsel was ineffective for failing to adequately investigate Petitioner's mental health.  ECF No. 151. Petitioner has not pointed to any articulable facts to support his assertion that defense counsel did not investigate Petitioner's mental health.  In fact, Petitioner notes that defense counsel requested a continuance in order to gather information about Petitioner's mental state.  <u>Id.</u>  Contrary to Petitioner's assertion, the request indicates that defense counsel decided to investigate Petitioner's mental state further before going forward with the case. Additionally, Petitioner has not established any prejudice from the alleged failure to

investigate further into Petitioner's mental state.  In other words, Petitioner did not

assert how further investigation would have resulted in a different outcome.

For the reasons stated above, Petitioner's claim is without merit.[5]

### B. Failure to challenge the Court's issuance of a protective order as to Kerri Toothman's medical records.

The District Court issued a protective order as to Kerri Toothman's medical

records finding as follows:

> …copying of such material for possession by the defendant
> or other person, except noted below, could compromise
> K.T.'s safety within a Bureau of Prisons facility and could
> compromise K.T.'s privacy rights, and that limiting the
> disclosure by the defense of the contents and substance of
> K.T.'s medical records in the manner prescribed below will
> not impair the defendant's ability to prepare and present a
> defense.

ECF No. 13.  Petitioner claims that the District Court sealed these medical records and

ruled that they were irrelevant.  Amend. Mot., ECF No. 151.  Clearly, the Petitioner is

incorrect.  Since Toothman's medical records were available to the defense throughout

the trial and appeal process, there would have been no reason for defense counsel to

challenge the court's ruling.

Therefore, Petitioner's claim is meritless.

---

[5] Petitioner's cites <u>Appel v. Horn</u>, 250 F. 3d 203 (3rd Cir. 2001) asserting that failing to adequately investigate his client's mental state is a violation of his Sixth Amendment right to counsel. ECF No. 151. The <u>Appel</u> court held that appointed counsel's failure to act during 10-day period between appointment and trial court's acceptance of capital defendant's waiver of right to counsel constituted constructive denial of counsel, in violation of defendant's Sixth Amendment rights; defendant's competency hearing, which took place during period at issue, was critical stage of trial, and counsel had obligation to investigate defendant's competency and subject state's evidence of competency to meaningful adversarial testing. <u>Id.</u>  The <u>Appel</u> case is distinguishable because it was not an ineffective assistance claim under <u>Strickland</u> but a constructive denial of counsel claim under <u>United States v. Cronic</u>, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

### C. Failure of counsel to challenge a specific prospective juror during voir dire.

On habeas review, federal courts generally accord "particular deference" to the judgment of trial counsel during voir dire. Gardner v. Ozmint, 511 F.3d 420,426 (4th Cir. 2007) (citing Hughes v. United States, 258 F.3d 453, 457 (6th Cir.2001)). Under similar circumstances, the Fourth Circuit determined that an attorney's decision not to strike a purportedly biased juror from the jury was a "'tactical decision' which neither demonstrated counsel's deficiency nor prejudiced [the defendant.]" Gardner, 511 F.3d at 426. Like the current case, the attorney in Gardner moved to strike the juror for cause and the judge denied the request. Id. The Fourth Circuit concluded that the attorney made a strategic decision not to utilize a preemptory challenge to remove the prospective juror. Id.

Petitioner asserts that trial counsel "should have motioned for the removal of a male juror who claimed his grandson, who was a corrections officer was killed by an inmate, be removed from the jury." ECF No. 151 at 2. In reviewing the voir dire transcript, no prospective juror mentioned a grandson who was killed by an inmate. However, prospective juror James Hyatt did disclose during voir dire that his cousin, a corrections officer, was killed by an inmate. Voir Dire Tr. at 53-54, 74-83, ECF No. 107. Therefore, the Court will presume for purposes of this discussion that Petitioner's amended 2255 motion is, in fact, referring to prospective juror James Hyatt.

Petitioner incorrectly states that defense counsel did not attempt to strike James Hyatt from the venire of prospective jurors. First, defense counsel moved to strike the entire panel of prospective jurors because they heard Hyatt disclose that his cousin, a corrections officer, was killed by an inmate. Voir Dire Tr. at 64-65, ECF No. 107. The

Court declined to strike the entire panel of prospective jurors. Id. at 66. The Court proceeded to question Hyatt individually about the death of his cousin and his ability to serve as an impartial juror. Id. at 74-83. Following these questions, defense counsel specifically moved to strike Hyatt from the venire of prospective jurors for cause. Id. at 83-84. The Court declined to strike Hyatt from the jury for cause. Id. at 85. After counsel utilized their respective preemptory challenges, Hyatt was not ultimately selected to serve as a juror during Dunham's trial. Id. at 313-315.

Further, Petitioner has not established a reasonable probability that he was prejudiced by prospective juror James Hyatt's comments during the voir dire process. Hyatt did not serve as a juror during Dunham's trial. Voir Dire Tr. at 315, ECF No. 107. Before he was excused as a prospective juror, Hyatt repeatedly stated that he could be impartial despite the death of his cousin. Id. at 53-54, 74-83. Additionally, the Court conducted individual and private voir dire of each prospective juror to determine whether each juror could be independent, impartial, and objective after hearing Hyatt disclose that his cousin was killed by an inmate. Id. at 87-247.

Therefore, Petitioner's claim is without merit.

### D. Failure of counsel to challenge venire of jury.

Petitioner contends that counsel was ineffective for failing "…to object to the fact that no blacks or other minorities were among the other selecties." ECF No. 151. The rules for the composition of all federal juries are established by the Jury Selection Act found in 28 U.S.C. § 1861, et seq. The statute requires that "petit jurors [be] selected at random from a fair cross-section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. The statute further requires

that each district establish a written plan for random jury selection which must eventually be approved by the Circuit Council of the United States Court of Appeals for the Fourth Circuit. 28 U.S.C. §1863. From this plan, a master jury wheel is to be established from which the eligible persons are to be selected for any and all jury duty. 28 U.S.C. § 1864. Such a plan was established and approved for this district and is in place.

While the jury selection may not systematically exclude any distinctive groups, juries actually chosen need not mirror the community. <u>Taylor v. Louisiana</u>, 419 U.S. 522, 538 (1975). In <u>Duren v. Missouri</u>, 439 U.S. 357 (1979), the Supreme Court stated that a defendant's Sixth Amendment right to a petit jury from a fair cross-section of the community is violated when there is a systematic disproportion between the percentage of a distinctive group in the community and its representation in venires from which juries are selected. <u>Id.</u> The Supreme Court in <u>Duren</u> established three criteria for a defendant to succeed in any motion such as that currently before the Court. The group excluded must be a "distinctive group"; next, the representation of the group in venires from which the juries are selected is not comparable in relation to the number of persons in the district's community, and third, that the under representation is the result of systematic exclusion of the group in the jury selection process. <u>Duren,</u> 439 U.S. at 364. The defendant must show that the jury selection process and the district plan, already approved by the Circuit Council of the United States Court of Appeals for the Fourth Circuit "systematically excludes" the distinctive group.

Under the plan for this district, prospective jurors are chosen from two

sources of information: (1) voters registration lists, and, (2) the Department of Motor Vehicles lists of operators and chauffeur licenses. From those data based lists, the names are randomly picked by a programed electronic data processing system. Such an open selection process is clearly not based upon race, but simply allows equal availability to anyone from any race to be included in the pool by simply having a driver's license or registering to vote.

The district's plan, with its unbiased data bases of voter registration lists and driver licenses when applied by the random computer drawing in the Clerk's office, avails each and every defendant of all the available jurors in the pool. Therefore, there is no systematic exclusion of a distinctive group and a motion to object to the jury pool would have been frivolous.

Therefore, the Petitioner's claim lacks merit.[6]

## IV. <u>Recommendation</u>

Based upon a review of the record, the undersigned recommends that Petitioner's **section 2255 motion [ECF No. 116] and** Petitioner's **amended section 2255 motion [ECF No. 151] be denied and dismissed** from the docket because Petitioner's claims are meritless.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such

---

[6] Further, Dunham's reliance on <u>Powers v. Ohio</u>, 499 U.S. 400 (1991) is misplaced. <u>Powers</u> involved allegations that an attorney used preemptory challenges "to remove seven black venire persons from the jury" on the basis of race. <u>Powers</u>, 499 U.S. at 400. Here, Dunham has not alleged that any specific jurors were excluded on the basis of race. Therefore, <u>Powers</u> is not instructive in resolving the current case.

objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985): <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to her last known address on the docket sheet, and to counsel of record, as applicable.

DATED: 7-1-2016

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE